UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAFE FOUNDATION, INC., <br>     Plaintiff, <br> v. <br> BRIEN A. SEELEY, M.D., et al., <br>     Defendants. | Case No.  16-cv-00628-JST <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** <br> Re: ECF No. 19 |

Plaintiff CAFE Foundation, Inc. seeks a preliminary injunction enjoining Defendants Brien A. Seeley, M.D., and Sustainable Aviation Foundation, Inc. from withholding a contact list and other account information, using certain terms to promote Defendants' symposium on electric aviation technology, and holding the competing symposium during May of this year. Id.

For the reasons set forth below, the Court will deny Plaintiff's motion for a preliminary injunction.

**I.     BACKGROUND**

**A.     Factual Background**

Defendant Brien A. Seeley founded CAFE Foundation, Inc., a nonprofit dedicated to personal aircraft technologies, in 1981. ECF No. 1 ¶¶ 1, 3. Seeley served as the president for 34 years, but after a disagreement with other board members, Seeley resigned from CAFE Foundation on October 15, 2015. Id. ¶¶ 3. Plaintiff CAFE Foundation contends that Seeley immediately founded Sustainable Aviation Foundation "for the purpose of pursuing his own interests in electrical aviation instead of those of the CAFE Foundation." Id. Plaintiff alleges Seeley took CAFE Foundation's assets, refused CAFE Foundation access to several of its online accounts, and is unfairly promoting a rival symposium on electric aircraft technology. Id.

For nine years, CAFE Foundation has organized the Electric Aircraft Symposium

1   (abbreviated as EAS), a symposium featuring "renowned experts in the field of electrical aviation
2   technology." Id. ¶ 17. The symposium is CAFE Foundation's primary fundraising event. Id.
3   CAFE Foundation's Tenth Annual Electric Aircraft Symposium is scheduled for May 19–20,
4   2016. ECF No. 19-1 at 6.
5       Plaintiff alleges that Defendants are promoting their own electrical aviation technology
6   symposium, currently scheduled for May 6–7, 2016. Id. Plaintiff contends that Seeley used
7   Plaintiff's contact lists to advertise and promote this rival event and continues to obstruct
8   Plaintiff's access to its own contact lists and online accounts. Id. at 6–7. The withheld
9   information prevents Plaintiff from effectively promoting CAFE Foundation's Electric Aircraft
10  Symposium. Plaintiff additionally contends that Defendants have "intentionally promoted [their]
11  symposium in a way that was calculated to deceive prospective speakers and attendees into
12  believing that the symposium was the CAFE Foundation's next annual Electric Aircraft
13  Symposium." Id. at 7. For example, Defendants chose a symposium date that coincided around
14  the same time as CAFE Foundation's annual symposium, advertised the symposium as EAS2016
15  and the tenth annual Electric Aircraft Symposium, and designed its web pages to mimic the
16  website CAFE Foundation used to advertise EAS 2015. ECF No. 1 ¶¶ 19–20.
17      Although Sustainable Aviation Foundation has since changed the name of the symposium
18  to Sustainable Aviation Symposium, Plaintiff alleges that the "change has little effect on clarifying
19  that this is neither a CAFE Foundation event nor an extension of the annual EAS events." Id. ¶
20  21. Plaintiff further asserts that the "SAS" mark is confusingly similar to the "EAS" mark. Id.
21  Plaintiff alleges that Defendant Seeley's actions have been deliberate and "conducted with the
22  intent of trading on the goodwill that inures to the CAFE Foundation and its Electric Aircraft
23  Symposium and EAS mark." Id. ¶ 26.
24      **B.   Procedural Background**
25      On February 5, 2016, Plaintiff filed the Complaint in this Court. ECF No. 1. Plaintiff
26  brings claims for (1) unfair competition pursuant to 15 U.S.C. § 1125(a); (2) unfair competition
27  pursuant to California Business & Professions Code § 17200; (3) common law injury to business
28  reputation; (4) common law unfair competition; (5) common law trademark infringement; (6)

2

1    intentional interference with prospective business advantage; (7) conversion; (8) breach of

2    fiduciary duty; and (9) declaratory relief.

3          On March 4, 2016, the Court heard (and granted) Defendants' motion for an extension of

4    time to file an answer.  ECF No. 17.

5          On March 10, 2016, Plaintiff filed an ex parte application for a temporary restraining

6    order.  Plaintiff sought access to a contact list and the information necessary to access what it

7    characterized as CAFE Foundation's MailChimp and Eventbrite[1] accounts.  See ECF No. 19-7

8    (proposed TRO order).  Plaintiff also requested that the Court set an order to show cause why a

9    preliminary injunction should not issue to enjoin Defendants from: "(1) withholding from the

10   CAFE Foundation, the CAFE Foundation's contact list and the information needed for the CAFE

11   Foundation to access both its MailChimp account and Eventbrite account,[2] (2) utilizing Electric

12   Aircraft Symposium, EAS or any confusingly similar term to advertise or promote a symposium

13   regarding electrical aviation technology, and (3) from holding a symposium regarding electrical

14   aviation technology in May of this year."[3]  Id. at 2.  The Court denied Plaintiff's ex parte

15   application for TRO, but ordered Defendants to show cause why Defendants should not be

16   preliminary enjoined pending litigation.  ECF No. 20.

17         On March 21, 2016, Defendants filed their opposition.  ECF No. 24.  On March 25, 2016,

18   Plaintiff filed its reply.  ECF No. 25.  On March 29, 2016, the Court conducted a hearing.

19   **II.  EVIDENTIARY OBJECTION**

20         In addition to their 25-page opposition, Defendants filed a four-page objection to certain

21   evidence submitted by Plaintiff with its motion.  ECF No. 23.  Civil Local Rule 7-3(a) requires

22   that "[a]ny evidentiary and procedural objections to [a] motion must be contained within the

---

[1] MailChimp is an email marketing service and Eventbrite is an event planning and promotion site.

[2] As set forth below, Defendants have now given Plaintiffs the information identified in their first request for relief, and the parties agree that this request is now moot.

[3] Plaintiff's proposed preliminary injunction order, however, proposes that Defendants "[r]efrain from holding any symposium where the subject matter includes electric aircraft technology."  ECF No. 19-8 (proposed preliminary injunction order).  The proposed order appears to bar Defendants from hosting a symposium on electric aircraft technology at any time, rather than enjoin them from hosting such a symposium in May.

3

1   [opposition] brief or memorandum." The Court will not consider Defendants' objection.

## III.  LEGAL STANDARD

Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. Id. at 20. "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

Preliminary relief may take two forms: it may be prohibitory or mandatory in nature. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir. 2009) (internal alterations and quotation marks omitted). A mandatory injunction orders a party to take action. Id. at 879. Because mandatory injunctions do more than preserve the status quo, they are "particularly disfavored," and the Ninth Circuit has observed that "courts should be extremely cautious about issuing a preliminary injunction" in those circumstances. Martin v. Int'l Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984).

## IV.  DISCUSSION

### A.  Likelihood of Success on the Merits

To obtain a preliminary injunction, Plaintiff must first establish a likelihood of success on the merits. Winter, 555 U.S. at 20.

#### 1.  Unfair Competition

The Court first addresses whether Plaintiff has demonstrated a likelihood of success on the

merits of its Lanham Act claim.[4]

Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device on any goods or in connection with any goods." Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1046 (9th Cir. 1998) (quoting § 43(a) (codified as amended at 15 U.S.C. § 1125(a))). Section 43(a) "protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). "To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) (internal quoations ommitted); see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999) ("To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, Brookfield must establish that West Coast is using a mark confusingly similar to a valid, protectable trademark of Brookfield's.").

Defendants argue that because Plaintiff has no protectable marks and because there is no confusion in the market, Plaintiff cannot show there is a likelihood of success on the merits on its unfair competition claim. ECF No. 24 at 13.

### a. Protectable Interest in "Electric Aircraft Symposium" or "EAS"

Plaintiff must first demonstrate a protectable interest in the marks "Electric Aircraft Symposium" and "EAS."

If a mark is federally registered, it is entitled to a presumption of validity, and the burden of proving invalidity rests on the defendant. Filipino Yellow Pages, Inc. v. Asian Journal Publs.,

---

[4] Plaintiff's Complaint also includes a common law claim of unfair competition and a claim pursuant to California Business & Professions Code § 17200. These claims are "substantially congruent" and therefore they can all be analyzed under the federal trademark Lanham Act. See Clearly v. News Corp., 30 F.3d 1255, 1263 (9th Cir.1994); Walter v. Jeremyel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000).

Inc., 198 F.3d 1143, 1146 (9th Cir. 1999). If the purported mark has not been registered, however, and the defendant asserts invalidity as a defense, the burden shifts to the plaintiff to prove that the mark is valid. Id. Plaintiff does not claim that the marks are registered; thus as the trademark plaintiff, CAFE Foundation bears the burden of showing that "Electric Aircraft Symposium" and "EAS" marks are valid. See Filipino Yellow Pages, Inc., 198 F.3d at 1146.

Marks are generally classified in one of five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005).[5] Generic marks are not eligible for protection. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010). To determine whether a term is generic, [the Court] looks to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." Advertise.com, Inc. v. AOL Advertising, Inc., 616 F.3d 974, 977 (9th Cir.2010). "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" Id. at 978 (alteration omitted). A trademark-eligible "descriptive" mark, by comparison, describes the qualities or characteristics of a product. Id. at 977. A descriptive term can be protected only if it has acquired secondary meaning in the minds of consumers, i.e., it has "become distinctive of the [trademark] applicant's goods in commerce." Filipino Yellow Pages, 198 F.3d at 1147.

Defendants contend that both the terms "Electric Aircraft Symposium" and "EAS" are generic and not protectable. ECF No. 23 at 14–15. They further argue that, even if the terms were descriptive, the marks have not achieved a secondary meaning. Id. at 15–16. In the face of these arguments, the burden is on Plaintiff to show that the marks are not generic.

Plaintiff offers argument, but little evidence, to establish the descriptive nature of the "EAS" mark.[6] But the Court need not decide the question, because even if EAS is descriptive,

---

[5] Some courts put "arbitrary" and "fanciful" in the same category. Filipino Yellow Pages, 198 F.3d at 1146.

[6] Plaintiff argues that the "EAS" mark is "clearly a strong mark" because it "does not describe the

6

there is no evidence that it has acquired secondary meaning.[7]  Ways to establish secondary meaning include direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.  Premier Nutrition, Inc. v. Organic Food Bar, Inc., 475 F. Supp. 2d 995, 1003 (C.D. Cal. 2007).  Plaintiff does not rely on any of these methods.

In the absence of such evidence, the Court must find that Plaintiff has not met its burden of showing a substantial likelihood of success on the merits of its trademark claim.  Filipino Yellow Pages, 198 F.3d at 1147.

### b.  Likelihood of Confusion

Assuming Plaintiff had demonstrated that the marks were protectable, Plaintiff would next need to demonstrate a likelihood of confusion.  Likelihood of confusion may be established by an analysis of eight factors: 1) strength of the mark; 2) the proximity of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) the type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) the likelihood of expansion of the product lines.  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979).  However, "the eight-factor test for likelihood of confusion is pliant," as the relative importance of each factor "will be case-specific."  Brookfield, 174 F.3d at 1054.

### i.  Strength of the Mark

To determine the strength of the "Electric Aircraft Symposium" and "EAS" marks, the Court first places the terms on the conceptual distinctiveness spectrum.  See Brookfield, 174 F.3d at 1058.  On this spectrum, the most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection.  Entrepreneur Media, Inc., 279 F.3d at 1141.  Suggestive and descriptive

---

symposium provided by either the CAFE Foundation or [D]efendants."  ECF No. 19-1 at 19.

[7] Plaintiff does not argue that the marks are suggestive, arbitration, or fanciful.

7

marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks. Id. Unlike descriptive marks, which "define qualities or characteristics of a product in a straightforward way," suggestive marks convey impressions of goods that require the consumer to "use imagination or any type of multistage reasoning to understand the mark's significance." Id. at 1141–42 (internal quotation marks omitted).

As discussed above, Plaintiff does not argue the strength of the mark "Electric Aircraft Symposium" but does argue that the "'commercial strength' of the 'EAS' mark is high." ECF No. 19-1 at 19. This mark is strong is because "[i]t does not describe the symposium provided by either the CAFE Foundation or [D]efendants." Id. Plaintiff argues that it has put in thousands of hours in "maintaining the preeminent reputation of the symposium" and "enjoys considerable goodwill in the electrical aviation industry." Id. Plaintiff provides no evidence to support this assertion.

The Court finds that this factor weighs slightly against Plaintiff at this stage of the litigation. See Premier Nutrition, Inc. v. Organic Food Bar, Inc., 475 F. Supp. 2d 995, 1005 (C.D. Cal. 2007) (finding that the factor weighed against the moving party where the moving party had not established the protectability of the mark).

### ii. Proximity of the Goods

The "proximity of the goods" factor concerns the relatedness of goods. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." Sleekcraft, 599 F.2d at 350.

This factor favors Plaintiff because both symposiums involve electric flight technology. Defendants concede that the two symposiums "are competitors." ECF No. 24 at 17.

### iii. Similarity of the Marks

The third factor looks at the similarity of the marks. In evaluating the similarity of the marks, a court considers the following "axioms:" "(1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1127–28 (9th Cir. 2014).

1    Plaintiffs argue that until late January 2016, Defendants "literally copied" the marks
2    "Electric Aircraft Symposium" and "EAS." ECF No. 19-1 at 17.  The marks are identical in
3    sound and meaning, and Defendants used the marks to convince speakers and attendees that
4    Defendants' symposium was the same as Plaintiff's event.  Id.  Although Defendants have since
5    changed their symposium name to "Sustainable Aviation Symposium" and "SAS," Plaintiff argues
6    that this "does little to make the marks any more distinctive" from Plaintiff's marks.  Id.

7    Defendants argue that the names of the symposiums are different and the parties'
8    respective websites promoting the 2016 symposiums look extremely dissimilar.  ECF No. 24 at
9    17–18.

10   The Court agrees that the *present* differences among the products weighs in favor of
11   Defendants.  The marks are presently dissimilar in sight and sound, including different design
12   features associated with the words that define them and a different combination of words.

### iv. Actual Confusion

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 633 (9th Cir. 2005). However, the absence of evidence of actual confusion is generally unnoteworthy because actual confusion is hard to prove.  Brookfield, 174 F.3d at 1050.  "The focus is confusion with respect to the source of a product or service." Rearden Commerce, Inc., 597 F. Supp. 2d at 1023; see also Entrepreneur Media, Inc., 279 F.3d at 1151 (9th Cir. 2002) ("To constitute trademark infringement, use of a mark must be likely to confuse an appreciable number of people as to the source of a product.").

Plaintiff argues that actual confusion "is a virtual certainty because Defendants actively and deceptively promoted their symposium as the 'tenth annual' Electric Aircraft Symposium." ECF No. 19-1 at 20.  Defendants respond that Seeley took measures to avoid any confusion regarding the conference name.  For example, in January of 2016, Defendant Seeley sent personal emails to all speakers at the Sustainable Aviation Symposium to note the name change.  Seeley Decl., Ex. D ("Our Sustainable Aviation Foundation has changed the official name of our May 6-7 symposium on electric aircraft to the 'Sustainable Aviation Symposium' (SAS).")  On February 4,

1  2016, all potential attendees were notified that the Sustainable Aviation Symposium was produced
2  by Sustainable Aviation Foundation. Id., Ex. E. Finally, on March 16, 2016, after Plaintiff filed
3  the instant motion, Defendants sent out a mass email to potential attendees that the symposium
4  was not associated with the CAFE Foundation. The email offered a full refund for attendees
5  confused about the organization producing the conference. Id., Ex. H.

Plaintiff has not demonstrated that there is any risk of consumer confusion going forward.

### v. Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1130 (9th Cir. 2014).

Defendants concede that both parties use webpages and email to promote their conferences and that their target demographics are similar. ECF No. 24 at 20. This factor weighs in favor of finding a likelihood of confusion.

### vi. Type of Goods and Degree of Care

Likelihood of confusion is determined on the basis of a "buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353. What is expected of this reasonably prudent consumer depends on the circumstances. A consumer is "more discerning" and "less easily confused" when he or she is purchasing an expensive item and when the products being sold are marketed primarily to expert buyers. Brookfield, 174 F.3d at 1060.

Both sides agree that registration for their respective conferences costs hundreds of dollars, to which travel and lodging expenses and the other incidental costs associated with attending must be added. Williams Decl. ¶ 8; Dempsey Decl. ¶ 5. The Court agrees with Defendants that consumers deciding to attend Defendants' symposium are likely to exercise a high degree of care because of the cost of attendance and because of their specialized interest in the aviation industry. This factor weighs against finding a likelihood of confusion.

### vii. Defendants' Intent

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing

10

courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." Sleekcraft, 599 F.2d at 354.

Because Defendant Seeley initially began advertising Defendants' symposium as the tenth annual Electric Aircraft Symposium and EAS 2016, marks that are the same as Plaintiff's marks, the Court presumes that Dr. Seeley intended to deceive the public. This factor weighs in favor of finding a likelihood of confusion.

### viii. Likelihood of Expansion

Plaintiff argues that this factor is neutral because the two parties compete to a significant degree. ECF No. 19-1 at 22 (citing Brookfield, at 174 F.3d at 1055). Defendants respond that because there is evidence of a likelihood of expansion, the factor favors Defendants. ECF No. 24 at 20. The Court determines that because the parties are competitors, this factor is neutral and does not influence the Court's determination. See Brookfield, 174 F.3d at 1060 ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.").

Having applied the Sleekcraft, the Court finds that Plaintiff has not met its burden of establishing that Defendants' past use of the "EAS" mark creates a likelihood of confusion.

At this stage of the litigation, Plaintiff has not established a likelihood of success on the merits on its unfair competition claim.[8]

### B.     Likelihood of Irreparable Harm

To obtain preliminary relief, Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22 (emphasis in original). If the plaintiff's harm is merely monetary, it will not usually support injunctive relief. California Pharmacists Association v. Maxwell–Jolly, 563 F.3d 847, 851–52 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable harm . . . . Economic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*." (emphasis original)).

---

[8] Because Plaintiff's requests for relief regarding the contact list, MailChimp account, and Eventbrite account are now moot, the Court does not address the likelihood of success on the merits of Plaintiff's conversion claim.

11

In addition, harm that is "merely speculative" will not support injunctive relief, "although a loss of goodwill and reputation can do so." Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1057 (9th Cir. 2009).  A moving party cannot merely produce evidence of "unsupported and conclusory statements regarding harm [plaintiff] might suffer."  Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013)

Plaintiff argues that there is no adequate remedy at law if an injunction is not granted in this action. ECF No. 19-1 at 24.  It claims it will suffer the following harms in the absence of an injunction:  (1) Defendants' past use of "Electric Aircraft Symposium" and "EAS" and continued use of "Sustainable Aviation Symposium" and "SAS" in promoting its symposium; (2) the confusion amongst speakers and attendees regarding the Sustainable Aviation Symposium and its affiliation; and (3) damaged goodwill to Plaintiff that may result if Defendants organize a poor-quality symposium.  Id.  Plaintiff contends that if the preliminary relief is not granted, "CAFE Foundation will lose all of the good will it has enjoyed in the Electric Aircraft Symposium" and that "the loss of its major fundraising event may call an end to the foundation altogether." Id. at 25–26.  Plaintiff offers the declarations of Stephen P. Williams, a board member, and Johanna Dempsey, CAFE Foundation's Chairperson.  They both aver:

> I believe it is unlikely that persons who have already committed to attend defendant's symposium can also attend the CAFE Foundation's tenth annual Electric Aircraft Symposium since they are only approximately two weeks apart and many of the attendees travel great distances to attend. If defendants are permitted to continue with their planned symposium in May of 2013, after recruiting attendees and speakers with their misrepresentations, I believe that the CAFE Foundation may be left without the resources to conduct its business and the foundation may have to dissolve.

ECF No. 19-2, Williams Decl. ¶ 9; ECF No. 19-3, Dempsey Decl. ¶ 5.  Plaintiff raised about $33,500 after expenses from the symposium it held in 2014.  Williams Decl. ¶ 6.

These allegations are not sufficient to meet Plaintiff's burden of demonstrating irreparable harm, because they are unsupported by any evidence.  In Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc., the Ninth Circuit clarified that even a "strong case of trademark infringement" would not provide a presumption of irreparable harm.  736 F.3d at 1250.  Instead of

collapsing the first and second Winter factors, a party seeking injunctive relief "must proffer evidence sufficient to establish a likelihood of irreparable harm." Id. at 1251. A moving party cannot merely produce evidence of "unsupported and conclusory statements regarding harm [the plaintiff] might suffer." Id. at 1250.

The closest evidence of irreparable harm offered by Plaintiff is a declaration from Benjamin Barker, a past EAS attendee. See ECF No. 25-3, Barker Decl. Barker declares that he received an email from Defendant Seeley inviting him to EAS 2016. Id. ¶ 3. At the time, Barker believed that the event was affiliated with Plaintiff, but didn't learn until "months later" that the symposium was not affiliated with Plaintiff. Id. ¶¶ 4–5. However, this evidence goes to consumer confusion rather than irreparable harm. As the Herb Reed court noted, past consumer confusion does not demonstrate a likelihood of future harm. Herb Reed, 736 F.3d at 1250–51. Further, Plaintiff's claim that the Foundation "could" suffer harm, in the form of "damaged goodwill," is nothing more than an "unsupported and conclusory statements regarding harm [Plaintiff] *might* suffer." Id. at 1250.

Plaintiff has not shown that it is likely to suffer irreparable harm absent the extraordinary remedy of an injunction. Certainly evidence of loss of control over business reputation and damage to goodwill can support a finding of irreparable harm. Id. "But missing from this record is any such evidence." Id. And even if Plaintiff had introduced such evidence, it has not shown how enjoining Defendants' conference will help the Plaintiff. No one has come forward to say that he or she will attend, speak at, or sponsor Plaintiff's conference if only Defendants' conference is cancelled.

Plaintiff has not shown irreparable harm. Because Plaintiff has not established a likelihood of success on the merits on its trademark claim or shown that it will suffer irreparable harm, Plaintiff is not entitled to a preliminary injunction. In light of these conclusions, the Court need not reach the remaining factors of the balance of the equities or the public interest.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for a preliminary injunction.

/ / /

1  The case will be set for a Case Management Conference on June 1, 2016 at 2:00 p.m.  A
2  Joint Case Management Statement is due five court days beforehand.
3  IT IS SO ORDERED.
4  Dated:  March 31, 2016

_____
JON S. TIGAR
United States District Judge